UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **WILBURN TREECE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:24-cv-0114-LCB |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **COMMISSIONER,** | ) |
| | |
| Defendant. | |

## MEMORANDUM OPINION & ORDER

Wilburn Treece filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and a copy of the administrative record. (Doc. 6). Both Treece and the Commissioner have fully briefed the relevant issues, and Treece's case is ripe for review. For the following reasons, the Commissioner's final decision is due to be affirmed.

### I.   Background

Treece protectively filed an application for a period of disability and disability insurance benefits on November 3, 2020, alleging disability beginning November 20, 2017. He also protectively filed a Title XVI application for

supplemental security income the same day alleging the same date of onset. Both claims were denied initially on March 18, 2022, and upon reconsideration on August 3, 2022. Treece then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 31, 2023. Treece testified at the hearing, as did an impartial vocational expert ("VE"). The ALJ subsequently issued an unfavorable decision. The Appeals Council denied Treece's request for review, and the ALJ's decision became the Commissioner's final decision. This lawsuit followed.

## II.     The ALJ's decision

After the hearing, the ALJ issued a written opinion explaining his decision. (Tr. at 10-31). In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, he is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case,

the ALJ found that Treece did not engage in substantial gainful activity during the relevant time period. (Tr. at 13). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id*. If a claimant does not have a severe impairment, he is not disabled, and the inquiry ends. If he does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Treece had the following severe impairments: "degenerative disc disease of the lumbar spine, osteoarthritis of the right shoulder, bilateral carpal tunnel syndrome, intellectual disorder, depression, and anxiety." (Tr. at 13), citing 20 CFR 404.1520(c). The ALJ found the following conditions to be nonsevere: gout, obesity, and migraine headaches. (Tr. at 13).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step.

In this case, the ALJ found that Treece's impairments did not meet or medically equal any of the listed criteria. Specifically, the ALJ reviewed Listing 1.15, which focuses on disorders of the skeletal spine resulting in compromise of a nerve root(s); Listing 1.18, which focuses on abnormalities in major joints; and the listings relevant to Treece's carpal tunnel syndrome and mental impairments. (Tr. at 14-15). After reviewing the evidence, the ALJ concluded that there was no evidence of medical findings that were the same or equivalent to those or any other listed impairment. Therefore, the ALJ proceeded to step four.

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether he has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, he is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Treece's case, the ALJ found that he had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and can occasionally lift and/or carry, including upward pulling, twenty pounds and frequently can lift and/or carry, including upward pulling, ten pounds. He can stand and/or walk six of eight hours. The claimant occasionally can climb ramps, stoop, kneel, crouch, and crawl, but he cannot work on uneven terrain. No work on ladders, ropes or scaffolds. The claimant can frequently reach in all other directions, frequently handle, finger, and feel, and occasionally reach

overhead. He should not work around dangerous machinery or unprotected heights. The claimant can understand, remember, and carry out simple instructions and tasks but not detailed tasks. He occasionally can relate to and work with supervisors, coworkers, and the general public. There should be no frequent changes in the workplace. Should not work where vibrations area involved including no work with vibrating tools such as air compression tools or power tools. No frequent exposure to dusts, gases and poor ventilation. No outside work so no frequent exposure to cold, wetness and humidity and no work inside an enclosed cooler or open flames.

(Tr. at 18). Given this RFC, the ALJ determined that Treece was unable to perform his past relevant work as a floor cleaner. (Tr. at 29). However, the ALJ found that considering Treece's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. at 30). Specifically, he determined that he could work as an inspector, assembler, or hand packager. *Id*. This finding was based in part on testimony from an impartial vocational expert who testified at Treece's hearing. (Tr. at 31).

Based on the findings above, the ALJ determined that Treece was not disabled as defined by the Social Security Administration. *Id.*

## III. Standard of Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a

5

reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Zuba-Ingram v. Commissioner of Social Security*, 600 Fed. Appx. 650, 656 (11th Cir. 2015), quoting *Booth v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Further, if the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his ability to work must be evaluated. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). When evaluating a claimant's statements regarding the intensity, persistence or limiting effects his symptoms, ALJs consider

all the evidence, objective and subjective. 20 C.F.R. §§404.1529, 416.929. ALJs may consider the nature of the claimant's symptoms, the effectiveness of medication, a claimant's treatment, a claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between the claimant's statements and other evidence. 20 C.F.R. §§ 404.1529(c) (3)-(4), 416.929(c)(3)-(4).

**IV. Treece's Arguments**

Treece argues that the ALJ did not properly apply the Eleventh Circuit pain standard and that his decision, including his RFC determination, is not supported by substantial evidence. The Court notes that Treece does not argue in his brief that the ALJ erred in assessing any of his mental impairments. Rather, he focused his argument on alleged limitations from his back pain.

In his opinion, the ALJ found Treece's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. at 19). The ALJ found that Treece's subjective complaints were not consistently supported by the objective medical findings, including various imaging studies.

In his brief, Treece cites to various records where he reported back pain and the various problems associated with it. (Doc. 8 at 8), citing (Tr. 49, 371-72) (records indicating Treece's self-reports of back pain, lying in bed all day, difficulty sleeping, and difficulty with personal care.). He also points to his own testimony at his hearing where he stated that, although he drives "a little bit," his son often has to drive him because of his back pain. *Id.* citing (Tr. 52). He also cited his testimony about lifting, standing, walking, and sitting limitations. *Id.* at 56.

In addition to these records, Treece cites to others indicating that he has seen his family physician for chronic back pain since 2016. He noted that surgery was recommended at one time and that he continued to report pain. Other records Treece cites support his contention that he was regularly reporting pain in his lower back. *See* (Doc. 8 at 11), citing (Tr. 607-08, 617, and 1141) (indicating that Treece continued to report pain that was not relieved by injections; that the dosage of his pain medication was increased; and that he continued to self-report stiffness and limited range of motion). He also cited to records from a number of emergency room visits where he complained of back pain and associated difficulties. (Doc. 8 at 12-13), citing (Tr. 671, 675, 964, 975, 956, 1085, and 1104) (reporting to emergency room physicians that his back pain was a debilitating 8 out of 10; that he had fallen when his legs "gave out from underneath him as he reported they

frequently did"; and that he had difficulty cleaning himself after using the restroom).

Treece also pointed to records from an orthopedic clinic showing that he was diagnosed with lumbar spondylolisthesis and radiculopathy. *Id.* citing (Tr. 906-947). Those same records indicate that he had an unstable spine with foraminal stenosis and that surgery was recommended. *Id.* at 935. While that record noted that Treece would call back if he wished to proceed with the surgery, Treece does not appear to have done so. The remaining records Treece cites from that clinic indicate that he continued to report pain and underwent epidural injections.

Imaging studies of the Treece's lumbar spine between 2020 and 2022 consistently documented multi-level degenerative changes. In simple terms, these studies show that Treece has arthritis and structural problems in the lower back that are putting pressure on the nerves, which likely causes ongoing pain, stiffness, and possibly numbness or weakness in the legs. For example, the imaging results indicated mild disc desiccation and broad-based disc bulges at L3-L4, L4-L5, and L5-S1, with associated bilateral facet joint hypertrophy and bilateral neural foraminal narrowing, indicating narrowing of the spaces through which spinal nerves exit. (Tr. 940-41). Other scans confirmed bilateral pars defects at the L5 level, resulting in grade 1 anterolisthesis (forward slippage) of L5 over S1. *Id*. This condition, along with degenerative disc disease and chronic L5 spondylosis,

9

has led to moderately severe bilateral foraminal stenosis at L5-S1, with likely compression of the exiting L5 nerve roots. (Tr. 1107). These findings are consistent with degenerative lumbar spine disease, including spondylolisthesis, foraminal stenosis, and nerve impingement, which may reasonably be associated with chronic low back pain and radiating lower extremity symptoms. The ALJ found as much in his opinion.

Treece also points out that on January 19, 2022, he underwent a consultative evaluation by a nurse practitioner, during which he reported severe back pain radiating into both legs, frequent loss of balance, and an inability to stand for long periods. The nurse practitioner noted that he was using a cane and back brace, and that he demonstrated difficulty with balance-related tasks such as walking on heels or toes, squatting, or rising. She noted a slow and guarded gait and opined that his use of a cane was medically necessary for support and stability. She assessed multiple conditions, including severe back pain, carpal tunnel syndrome, arthritis in the hands, asthma, migraines, bipolar disorder, and gout. The nurse practitioner concluded that Treece could sit frequently and stand or walk occasionally, but only with frequent position changes and rest breaks due to back and leg pain with intermittent numbness and weakness. She further opined that he would have difficulty lifting or carrying but could occasionally lift up to 10 pounds for short

periods with rest, and that balance issues and frequent falls significantly limited his ability to walk.

According to Treece, the ALJ discounted his allegations of debilitating pain and limitations based on an improper and selective analysis of his medical records. In other words, Treece says that the ALJ cherry-picked evidence to support his conclusion that Treece's statements concerning the intensity, persistence and limiting effects of his pain were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 8 at 15-16), citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports [a] decision, but to disregard other contrary evidence" and a decision is not supported where it was reached "by focusing upon one aspect of the evidence and ignoring other parts of the record."). Treece argues that the ALJ "ignored, overlooked or misconstrued the evidence which is consistent with the Plaintiff's allegations of debilitating pain and contrary to her determination." (Doc. 8 at 16). At base, Treece contends that the ALJ's decision, including his RFC determination, is not supported by substantial evidence. The Court disagrees.

A review of the ALJ's decision shows that he found Treece's subjective complaints conflicted with the objective findings from his physical examinations and imaging studies. He also relied on evidence of improvement as well as Treece's own reported daily activities. For example, the ALJ noted that, despite

Treece presenting to his primary care physician with a cane and complaining of lower back pain for years, that doctor consistently documented normal gait, coordination, and sensation on multiple occasions. *See, e.g.,* (Tr. at 702). Other providers noted the same. *See, e.g.,* (Tr. at 717) (noting normal gait, coordination, and no gross focal sensorimotor deficits).

While the ALJ noted several imaging studies showing abnormalities, he pointed out that the physical examinations conducted in conjunction with those visits were relatively normal. *See, e.g.,* (Tr. at 20), citing (Tr. at 922) (orthopedic specialist noting that, despite abnormal x-ray findings, Treece had no focal motor deficits, no sensory deficits, good range of motion in his hips, and was "painless bilaterally"). The ALJ also noted records from another surgeon who reviewed Treece's MRIs and noted a grade 1 L5-S1 spondylolisthesis causing mild neural foraminal stenosis. (Tr. at 914). However, that doctor noted normal sensation, a negative straight leg raise test, intact lumbar range of motion, normal gait, and no pain when palpating the lumbar spine. *Id.* These and other records summarized by the ALJ show a similar pattern. Although Treece does have pain that is explained by abnormal objective findings, the records indicate that the pain is not as limiting as Treece claims. *See* (Tr. 21-22).

Moreover, the ALJ noted Treece's own testimony that he sometimes drives, shops, and helps to care for his disabled child. The ALJ specifically found that

Treece's ability to drive would mean that he has the physical ability to sit in one place for a period of time, turn the steering wheel, and maneuver his body to see in multiple directions and angles while simultaneously operating foot controls. The ALJ also discounted Treece's use of a cane as evidence of severe limitations because, he said, the record did not demonstrate that any physician had ever prescribed the use of one.

Given these findings, as well as the others contained in the ALJ's lengthy opinion, the Court finds that there is substantial evidence for the ALJ's determinations regarding Treece's subjective complaints and his RFC. In arguing that the ALJ picked out only the evidence that supported his findings while ignoring others, Treece is essentially asking this Court to give more weight to the records he has highlighted, i.e., he is asking the Court to reweigh the evidence with emphasis on portions of the record that are more favorable to him. However, this would be improper. As noted above, this Court's limited review "precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Further, the Court must affirm if the ALJ's decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015). The Court has not doubt that Treece has pain associated with his chronic back problems. However, because the

record contains substantial evidence to support the ALJ's findings regarding the severity of that pain and the resulting RFC, Treece is due no relief from this Court.

## V. Conclusion

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**.

**DONE** and **ORDERED** April 1, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE